**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**JEFFREY E. LOVE,**

       **Petitioner,**

**vs.**

                                  **CASE NO. 3:08cv370-LC/WCS**

**WALTER McNEIL,**

       **Respondent.**

_____/


## REPORT AND RECOMMENDATION

This is an amended petition for writ of habeas corpus filed by Jeffrey E. Love pursuant to 28 U.S.C. § 2254. Doc. 5. Petitioner challenges his convictions for corruption by threat against a public servant, case number 01-4459, and carrying a concealed firearm and resisting arrest without violence, case number 01-4460, in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida. *Id.* Respondent filed an answer and the record in paper form. Doc. 19. Petitioner filed two traverses. Docs. 20 and 21. Respondent concedes that the petition was timely filed. Doc. 19, p. 6.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U.S.C. §§ 2254(b)(1), (c)." O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999). To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (*citing* Picard). However, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).[1]

While it is not necessary that the petitioner cite "book and verse" of the Constitution, the state court must be alerted to the fact that a federal constitutional claim is raised. Duncan, 513 U.S. at 365-366, 115 S.Ct. at 888 (citations omitted); *see also* McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005) (holding that a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record") (citations omitted). The petitioner also "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999); Pope v. Rich, 358 F.3d 852, 854

---

[1] If no constitutional claims are raised, then §2254 is inapplicable and the exhaustion inquiry is irrelevant. Engle v. Isaac, 456 U.S. 107, 120, n. 19, 102 S.Ct. 1558, 1567, n. 19, 71 L.Ed.2d 783 (1982).

(11th Cir. 2004) (applying this one complete round requirement to state collateral review process as well as direct appeal).

If a claim was not fairly presented but is procedurally barred from further state court review,[2] Petitioner must demonstrate cause for the default and actual prejudice, *or* demonstrate that the constitutional violation has probably resulted in conviction of an innocent person. Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For a claim which was fairly presented and adjudicated on the merits by the state court, the state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence. § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation omitted). Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>   (A) the claim relies on –
>
>       (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or
>
>       (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence;  and

---

[2] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been *properly* exhausted, to distinguish them from claims exhausted by procedural default.  *See* O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

As explained by the Supreme Court, "[i]lf there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing compliance with the balance of the subsection's requirements."  (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, *himself or herself contributing to the absence of a full and fair adjudication in state court*, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.  *Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.*  Yet comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort.

529 U.S. at 437, 120 S.Ct. at 1491 (emphasis added).

Further, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389

(2000); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125

(2000).

> The "contrary to" clause in § 2254(d)(1) "suggests that the state court's decision must be substantially different" from the relevant Supreme Court precedent. Although a state court's decision that "applies a rule that contradicts the governing Supreme Court law is "contrary," a state court decision that applied "the correct legal rule" based on Supreme Court law to the facts of the petitioner's case would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. In evaluating the "'unreasonable application' inquiry," the federal court should consider whether the state court's application of the law was "objectively unreasonable" and should not apply the subjective "'all reasonable jurists'" standard. The Supreme Court clarified that, under 28 U.S.C. § 2254(d)(1), the federal court may not issue the writ unless it finds that the state court applied Supreme Court law unreasonably.

<u>Fugate</u>, 261 F.3d at 1216 (summarizing the conclusions in <u>Williams</u>, citations omitted).

For an ineffectiveness of counsel claim, the "clearly established" standard is set

forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Under <u>Strickland</u>, "[a] convicted defendant making a claim of ineffective assistance of

counsel must identify the acts or omissions of counsel that are alleged not to have been

the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In

determining whether counsel gave adequate assistance, "counsel is strongly presumed

to have rendered adequate assistance and made all significant decisions in the exercise

of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner

has a heavy burden, as he must show that "no competent counsel would have taken the

action that his counsel did take." <u>Fugate</u>, 261 F.3d at 1217 (citation omitted). There are

no rigid requirements or absolute duty to investigate a particular line of defense, and

"more is not always better." *Id.* (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.


While Strickland explained the performance and prejudice prongs of analysis, the

court need not address them in that order or even address both, as failure to

demonstrate either step of Strickland is dispositive of the claim against the petitioner.

466 U.S. at 697, 104 S.Ct. at 2069.

**Ground one**

Petitioner asserts that his conviction for carrying a concealed firearm violated his

right to bear arms protected by the Second Amendment. He asserts that he carried the

firearm just days after the attack on the World Trade Center, that our country was then

at war, and that he is a male over age 18 and in the militia. Doc. 5, p. 4. He argues that

he had a concealed firearm permit from an adjoining state (Alabama). Doc. 5, p. 6; doc.

21, p. 1. This argument necessarily only involves the conviction for carrying a

concealed firearm.

Respondent asserts that this claim was never presented to state court and is

procedurally defaulted. Doc. 19, p. 9. Respondent is correct. The index of documents

in the record on direct appeal does not mention any written motion that might have

raised this federal claim. Ex. A, pp. 1-2. The claim was not raised in the motion for

judgment of acquittal at the end of the trial. Ex. B, pp. 69-78. The statement of judicial

acts to be reviewed on direct appeal did not list this claim. Ex. A, p. 76. The claim was

not raised in the initial brief on direct appeal. Ex. C, pp. 15-16. The claim should have

been raised during the trial and on direct appeal as trial error.[3] And, even if it might

have been properly raised in Petitioner's Rule 3.850 motion, it was not. Ex. L, pp. 32-

61; 82-119 (amended motion).

Petitioner has not shown cause for his procedural default, or prejudice to the

outcome. Though Second Amendment law is still developing as a consequence of

District of Columbia v. Heller, __ U.S. __,128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), it is

doubtful that Petitioner could show prejudice. As the Supreme Court in Heller said:

> Like most rights, the right secured by the Second Amendment is not
> unlimited. From Blackstone through the 19th-century cases,
> commentators and courts routinely explained that the right was not a right
> to keep and carry any weapon whatsoever in any manner whatsoever and
> for whatever purpose. *See, e.g.*, *Sheldon*, in 5 Blume 346; Rawle 123;
> Pomeroy 152-153; Abbott 333. For example, the majority of the
> 19th-century courts to consider the question held that *prohibitions on
> carrying concealed weapons were lawful under the Second Amendment* or
> state analogues. *See, e.g.*, *State v. Chandler*, 5 La. Ann., at 489-490;
> Nunn v. State, 1 Ga., at 251; see generally 2 Kent *340, n. 2; The
> American Students' Blackstone 84, n. 11 (G. Chase ed. 1884). Although
> we do not undertake an exhaustive historical analysis today of the full
> scope of the Second Amendment, nothing in our opinion should be taken
> to cast doubt on longstanding prohibitions on the possession of firearms
> by felons and the mentally ill, or laws forbidding the carrying of firearms in
> sensitive places such as schools and government buildings, or laws
> imposing conditions and qualifications on the commercial sale of arms.

---

[3] "A claim of trial court error generally can be raised on direct appeal but not in a
rule 3.850 motion, and a claim of ineffectiveness generally can be raised in a rule 3.850
motion but not on direct appeal." Bruno v. State, 807 So. 2d 55, 63 (Fla. 2001)
(footnotes omitted, citing FLA. R.CRIM. P. 3.850(c), which provides: "This rule does not
authorize relief based on grounds that could have or should have been raised at trial
and, if properly preserved, on direct appeal of the judgment and sentence.")

128 S.Ct. at 2816-2817 (emphasis added, footnote omitted). *See, e.g.*, <u>Dorr v. Weber</u>,

__ F.Supp.2d __, 2010 WL 1976742, *8 (N.D. Iowa May 18, 2010) (No. C

08-4093-MWB) (regulation of carrying concealed firearms not forbidden by the Second

Amendment). This court, therefore, should not reach the merits of ground one.

**Ground two**

This ground is difficult to decipher. Petitioner contends that he was subjected to

an illegal search and "deprivation of liberty," but then asserts that the "warrant for

explosives and head trauma" was "bogus" and "no excuse for judge with ethics

convictions." Doc. 5, p. 4. Petitioner further elaborates in his two traverses, accusing

the county judge (whom he had threatened to kill) of having been "convicted" by the

Florida Supreme Court of ethics violations.[4] Doc. 21, p. 1. The claim becomes only

slightly clearer in the attached narrative. Petitioner alleges that he "received a traffic

ticket in intensive care in trauma alert and was given a court appearance 29 days later,

but to a judge with 8 ethics convictions, labeled a disgrace by the Fl. Supreme Court, a

serious head injury as the victim, hit head on, involving the son of a police officer, was

no excuse to miss traffic court, even when petitioners parents tried to pay ticket will

petitioner was in intensive care." Doc. 5, p. 7. Petitioner then restates his claim that

"[t]he state used a bogus warrant of explosives to illegally search petitioners home and

---

[4] The statement of probable cause said that an arrest warrant had been issued
for Petitioner's arrest for failure to appear on traffic tickets. Ex. A, p. 3. Petitioner then
called several state officials and threatened to kill the county judge who had issued the
arrest warrant. In 2003, shortly before Petitioner's trial, the particular county judge who
was threatened by Petitioner was publically reprimanded and fined $50,000 for ethical
violations during a judicial campaign in 1998. *In re* <u>Kinsey</u>, 842 So. 2d 77 (Fla.), *cert.
denied*, 540 U.S. 825 (2003).

involve federal agencies. As well as a fabricated threat to the president of the United States." *Id.*

The claim, therefore, seems to be a Fourth Amendment challenge to a search. Respondent is correct that Petitioner did not raise a Fourth Amendment search claim in his Rule 3.850 motion (as he alleges in his petition), and did not raise it on direct appeal either.[5] Like the last claim, the index of documents in the record on direct appeal does not mention any written motion that challenged a search. Ex. A, pp. 1-2. The statement of judicial acts to be reviewed on direct appeal did not list a search claim. Ex. A, p. 76. The claim was not raised in the initial brief on direct appeal. Ex. C, pp. 15-16. And, even if it might have been properly raised in Petitioner's first Rule 3.850 motion, a search claim was not. Ex. L, pp. 32-61; 82-119 (amended motion). Petitioner has not shown cause or prejudice, and this court may not reach the merits of this search claim.

If the claim is that Petitioner could lawfully threaten to kill Judge Kinsey because she had been publically reprimanded for campaign ethics violations, the claim is

---

[5] Had the claim been raised on direct appeal, it is doubtful that this court could entertain it. If "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (footnotes omitted). Petitioner could have exhausted an ineffective assistance of counsel claim regarding the search, but did not. See Kimmelman v. Morrison, 477 U.S. 365, 374-379 and n. 1, 106 S.Ct. 2574, 2582-85 and n. 1, 91 L.Ed.2d 305 (1986) (distinguishing Fourth Amendment claim, which may not be litigated under § 2254, with Sixth Amendment ineffective assistance of counsel claim based on counsel's failure to litigate the Fourth Amendment claim). *See also* Green v. Nelson, 595 F.3d 1245, 1251-52 (11th Cir. 2010) (considering the affidavit for warrant without the allegedly false information, there was still sufficient information to establish probable cause, so no prejudice from counsel's failure to seek suppression of blood and DNA evidence).

frivolous on its face.  Petitioner raised a similar claim as "newly discovered evidence" in his amended Rule 3.850 motion.  Ex. L, p. 113.  There he argued that Judge Kinsey was not fair and impartial due to her reprimand.  *Id.*  The Rule 3.850 court ruled:

> Furthermore, Defendant has not alleged that his warrant resulted from any inappropriate reaction or personal knowledge on the part of Judge Kinsey. In fact, she testified that nine people failed to appear on the day on which Defendant's warrant was issued, and "everyone who failed to appear that day was given the same.  It was a warrant with a $5,000 bond." Furthermore, it bears repeating that even if Defendant's warrant were improperly issued, it does not constitute a defense to charges of violence against law enforcement officers.

Ex. L, p. 135.  To the extent this aspect of ground two is exhausted, Petitioner has not shown that the state court's ruling has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground three**

Petitioner contends that his bail for missing traffic court was set at $5,000, and argues that this was excessive bail in violation of the Eighth Amendment.  Doc. 5, p. 5. He asserts that the county judge whom he threatened to kill had refused to lower the bail, even though he had a head injury and could not protect himself in detention.  *Id.*, p. 7.  He asserts that his brother was murdered in jail while on minor charges.  *Id.*

This claim was not raised before the trial court in any manner, and is not in Petitioner's Rule 3.850 motion.  It is procedurally defaulted.  Since Petitioner has not

shown cause or prejudice for this default, the court cannot reach the merits of the claim.[6]

**Ground four**

Petitioner asserts he was denied a fair trial, a denial of federal due process. Doc. 5, p. 5. The claims, briefly stated, are a collage of many of the claims from Petitioner's Rule 3.850 motion. Petitioner contends that the victim had friends at the trial, and he never had a chance to defend against them. *Id.*, p. 7. He states: "Defense counsel as well as the whole court is friends with Judge Kinsey and her husband Roy who represents police officers in criminal matters." *Id.* He asserts that he was involuntarily committed to a mental hospital, "doped" for trial, paraded before the jury wearing a GPS device, and several witnesses for the prosecution were in the courtroom ("paraded in") and did not testify. *Id.* He asserts that Judge Kinsey was allowed to testify as the victim even though she testified that she had never talked with Petitioner. *Id.* With respect to the offense involving Judge Kinsey (corruption of a public servant), Petitioner asserts that "the elements were never proven, there was no quid pro quo." *Id.* Petitioner argues that his defense counsel told the jury that Petitioner was "so mentally ill the only thought on his mind was KILL, KILL, KILL," and he asserts that the trial judge laughed at him when he objected to his lawyer's statement. *Id.*

---

[6] Further, § 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Petitioner is in custody due to a conviction. The setting of bail might have been subject to review while Petitioner was in custody unable to make bail. The amount of bail, however, has little to do with whether a defendant has been convicted in violation of the federal constitution.

Respondent again argues that this generalized claim of denial of a fair trial was not raised in state court. Doc. 19, p. 11. Respondent also argues that to the extent that subsidiary points raised above were argued without success in state court, Petitioner has not shown that the state court's rulings have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Most of these claims are trial error claims and they should have been raised on direct appeal, not by a Rule 3.850 motion. The contention that the trial judge, defense counsel, and others, were friends was not raised on direct appeal. Ex. C, pp. 15-16. Further, Petitioner did not mention on direct appeal that his trial was unfair because he was involuntarily committed to a mental hospital, that he was "doped" during trial, that he wore a GPS unit in front of the jury, that witnesses for the prosecution were present at trial and did not testify, that County Judge Kinsey was allowed to testify even though she had never talked with Petitioner, or that the trial judge laughed at Petitioner when he objected that his lawyer told the jury that he was so mentally ill that the only thought on his mind was to kill. *Id.*

The GPS and the "parading" of non-testifying prosecution witnesses claims were not raised in the Rule 3.850 motion either. Ex. L, pp. 82-119. Those are procedurally defaulted. Since cause and prejudice has not been shown, the court should not reach the merits of these claims.

Petitioner did raise the other issues in his amended Rule 3.850 motion. Ex. L, pp. 82-119. Despite the fact that these were trial error claims, the state court addressed

the merits, although in some cases the "merits" were addressed when addressing the prejudice aspect of an ineffectiveness claim.  *Id.*, pp. 120-138.

The Rule 3.850 court found that Petitioner had failed to show how the alleged friendships during trial prejudiced him (in the context of an ineffectiveness claim).  Ex. L, p. 130.  The court rejected as unsupported Petitioner's claim that he was physically and mentally incapable of "making a defense" at trial.  *Id.*, p. 127.  The court noted that he was evaluated and found to be competent to stand trial.  *Id.*  The court found no intervening circumstances to alter that ruling, and denied relief.  *Id.*  The court also found no prejudice (in the context of a claim of ineffectiveness) for failing to give an instruction that Petitioner was on psychotropic medication at the time of trial, especially since Petitioner did not testify.  *Id.*  Petitioner made a number of claims that his counsel was ineffective for repeating to the jury statements he made about killing people, and that he had a right to kill Judge Kinsey, but the Rule 3.850 court found that these arguments were in pursuit of a sound trial strategy, of proving the insanity defense.  Ex. L, pp. 126, 136.

Petitioner has not shown that these rulings have "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  In particular, the Supreme Court has repeatedly said that counsel is not ineffective when candidly admitting a client's shortcomings as a strategy to build credibility with the jury to focus on the more relevant issues in the case.  Yarborough v. Gentry, 540 U.S. 1, 3, 9-10, 124 S.Ct. 1, 3, 6-7, 157 L.Ed.2d 1 (2003); Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (counsel's concession of guilt at the outset of a capital case was not

ineffective assistance of counsel because it was a reasonable strategy to try to avoid the death penalty).

I read the allegation that "the elements were never proven, there was no quid pro quo," to relate only to proof of the elements of the charge of corruption of a public servant. That is the only charge in which "quid pro quo" has any relevance. The Rule 3.850 court declined to address this claim, finding that it should have been raised on direct appeal. Ex. L, p. 137. However, there were arguments raised at trial and on direct appeal about the sufficiency of the evidence as to the charge of corruption of a public servant.

Petitioner was charged in case number 01-4459 with unlawfully threatening harm to a public servant, that is, Judge Kinsey "and/or" Escambia County Law Enforcement Officers by saying: "I will kill Judge Kinsey and any law enforcement officer who tries to arrest me on the failure to appear warrant," "or words to that effect." Ex. A, p. 1. It was further alleged that this was said with intent to influence the performance by a public servant of a discretionary act in the performance of a public duty, that is, taking action on the pending charges and warrant against Petitioner. *Id.* This was alleged to violate FLA. STAT. § 838.021(1)(a) and (3)(b). *Id.*

In the motion for judgment of acquittal, Petitioner's attorney argued that County Judge Kinsey did not have an active role in the arrest Petitioner, and therefore the threat to kill her could not have influenced the arrest. Ex. B, p. 73. This was argued to be a failure of proof. *Id.* The trial court denied the motion for judgment of acquittal, finding that the evidence to prove the elements of the offenses of corruption of a public servant and resisting arrest with violence was sufficient to go to the jury. Ex. B, p. 77.

On direct appeal, Petitioner argued that no witness mentioned any law officer by name or said that Petitioner ever threatened an Escambia County law enforcement officer. Ex. C, p. 37. With regard to Judge Kinsey, it was argued that the evidence did not prove an intention to influence Judge Kinsey's public duties. *Id.* It was argued that the threat was to kill Judge Kinsey or the arresting officer if he were arrested. *Id.*, p. 38. It was not a threat that Petitioner would kill Judge Kinsey if she failed to rescind the arrest warrant. *Id.* Petitioner argued that the conduct was "simply not the type of conduct proscribed by chapter 838. While the conduct may have amounted to some other crime, it did not amount to a violation of section 838.021, which is classified as a public corruption statute." *Id.* (footnote omitted). In response, the State argued without elaboration that a threat to kill anyone who tried to serve an arrest warrant, including Judge Kinsey herself, was an attempt to influence Judge Kinsey to withdraw the warrant. Ex. D, pp. 34-35. The First District Court of Appeal agreed with the State, *per curiam*.

It is unnecessary here to decide whether the foregoing was sufficient to exhaust the *federal* fair trial claim.[7] "An application for a writ of habeas corpus may be denied on

---

[7] It is "an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979), *relying on* In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The question is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789 (emphasis by the Court); Fallada v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987). In this case, Petitioner seems to have raised only a state law sufficiency of evidence claim. Whether this adequately exhausted state court remedies as to the federal claim is uncertain. *Compare*, two

the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). That is recommended here.

At trial, an assistant clerk testified that Petitioner placed a telephone call to an employee of the Escambia County Clerk of Court. Ex. B, p. 20. The caller (Petitioner) identified himself and told the assistant clerk, who worked in the traffic division, that he had an outstanding warrant for his arrest for a traffic case, "and he stated that he was going to kill anyone who came to try to serve the warrant on him, as well as he was going to kill Judge Kinsey." *Id.*, pp. 20-21. The clerk testified that she transferred the call to Judge Kinsey's office. *Id.*, p. 21. Judge Kinsey's judicial assistant testified that Petitioner told her over the telephone:

> He told me his name was Jeffrey Love and that he had been involved in an accident, had been hospitalized, and there was a warrant out for his arrest and that he wanted me to give him a new court date. I asked him to back up and I pulled his case up on the screen and asked him, are you telling me you were charged with driving a motorcycle without the proper license and that you failed to appear on your court date? He said yes.

> I asked him if he had still been hospitalized on his court date. He said no. So I told him that he was gonna have to turn himself in in order to get a new court date. He then said, yea, that's gonna cost me five hundred more dollars. And I told him that turning himself in on the warrant was gonna be his only way to get a new court date, and then he just really calmly said to me, well, someone's gonna die, ma'am.

> So I said to him, well, you know, that sounds like a threat. Who exactly are you threatening? He listed a couple of people. He listed Judge Kinsey, anyone at the courthouse that tried to take him into custody. . . .

---

unpublished decisions of the Eleventh Circuit, Mulinix v. Secretary for the Department of Corrections, 254 Fed. Appx. 763 (11th Cir. November 17, 2007) with Pearson v. Secretary, Department of Corrections, 273 Fed. Appx. 847, 850 (11th Cir. April 15, 2008).

*Id.*, pp. 24-25. She further testified that Petitioner said "I want you to call them [people at the jail] and tell them to come and get me, and when they get here, I'm going to open fire." *Id.*, p. 25.

This plainly was a threat that Petitioner would kill Judge Kinsey if she did not rescind the warrant and give him a new court date. It was said in that context. It was an attempt to cause Judge Kinsey to illegally exercise her official discretion with respect to the pending warrant and the setting of a court date. Even though not spoken directly to Judge Kinsey, it was spoken to her judicial assistance and the threat was made during the discussion about the warrant and a new court date. This was enough evidence under Florida law for the jury to conclude that Petitioner intended that Judge Kinsey be told of his threat. J.G. v. State, 915 So. 2d 274, 276 (Fla. 4th DCA 2005).

Further, sufficiency of the evidence is determined "with reference to the substantive elements of the offense as defined by state law." Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985). "[I]t is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' " Herring v. Secretary, Dept. of Corrections, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 928 (2005), *quoting*, Agan v. Vaughn, 119 F.3d 1538, 1554-1355 (11th Cir.1997) (citations omitted). The appellate court in Petitioner's case rejected this claim, and in so doing, determined the elements of the offense as a matter of state law. For all of these reasons, this last aspect of ground four is without merit.

**Ground five**

This claim is also very difficult to understand.  Petitioner contends:

The only officer to testify that petitioner has since been fired, all evidence was fabricated in this case as well involvement of federal agents and their voices were removed from a fabricated intake tape to more substantiate the states claim of mental illness and that petitioner is so dangerous that he must be dealt with.

Doc. 5, pp. 7-8.  This appears to be a claim that some sort of evidence was presented at trial that was "fabricated."  Read generously, this appears to be a *Giglio* claim.[8]  Since a *Giglio* claim typically relies upon evidence that is only learned after the trial has concluded, this is a claim that properly should have been presented in the Rule 3.850 motion.[9]

Petitioner claimed in ground five of his Rule 3.850 motion that he informed his attorney that the "intake tape" was altered, that *Miranda* warnings were added, and that Petitioner was never given those warnings and never signed a waiver.  Ex. L, pp. 43; 91 (amended motion).  He also alleged that the 911 audiotape was altered.  *Id*.  He claimed that his attorney was ineffective for failing to pursue this before the trial.  *Id*.

The Rule 3.850 court denied this claim as insufficiently alleged.  The court said:

_____

[8] The Government's knowing use of false testimony violates due process.  <u>Giglio v. United States</u>, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972), citing <u>Mooney v. Holohan</u>, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935), <u>Pyle v. Kansas</u>, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942), and <u>Napue v. Illinois</u>, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

[9] *See* <u>Ferrell v. State</u>, 29 So. 3d 959, 977-978 (Fla. 2010) (ruling upon Rule 3.850 *Giglio* claims and noting that one *Giglio* claim was actually a claim of improper closing argument that should have been raised on direct appeal, presumably because the basis for the claim was known at trial).

Defendant does not allege how the tape was altered other than to say
"Miranda warnings were added after the tape was made."  Defendant
does not allege any other substantive difference in the tapes, except for
saying that "U.S. Secret Service agents" were "erased from the tape" and
"Paul Hawke was added."  Such non-specific allegations cannot form the
basis for postconviction relief.

Ex. L, p. 128.

As a claim of ineffective assistance of counsel, the Rule 3.850 court was correct.

"A convicted defendant making a claim of ineffective assistance of counsel must identify

the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment."  466 U.S. at 690, 104 S.Ct. at 2066.  "Conclusory

allegations of ineffective assistance are insufficient."  Wilson v. United States, 962 F.2d

996, 998 (11th Cir. 1992) (drug quantity at sentencing, failure to allege specific facts),

*quoting*, United States v. Lawson, 947 F.2d 849, 853 (7th Cir. 1991) (same); Aldrich v.

Wainwright, 777 F.2d 630, 636-37 (11th Cir. 1985), *cert. denied*, 479 U.S. 918 (1986)

(defendant's conclusory allegations about the testimony of uncalled witnesses are

insufficient to state a claim of ineffective assistance of counsel).  Petitioner does not

allege what precisely was the falsity, except for the *Miranda* warnings, and he does not

allege what his lawyer might have done differently with respect to issue of a  *Miranda*

warning to produce a different outcome.

Likewise, a viable *Giglio* claim requires the allegation of specifics:.

In order to prevail on a *Giglio* claim, a petitioner must establish that the
prosecutor "knowingly used perjured testimony, or failed to correct what
he subsequently learned was false testimony," and that the falsehood was
material.  *United States v. Alzate*, 47 F.3d 1103, 1110 (11th Cir.1995).
For *Giglio* purposes, "the falsehood is deemed to be material 'if there is
any reasonable likelihood that the false testimony could have affected the
judgment of the jury.' " *Id.* (quoting *United States v. Agurs*, 427 U.S. 97,
103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976)(emphasis added)).

Tomkins v. State, 193 F.3d 1327, 1339 (11th Cir. 1999), *cert. denied*, 531 U.S. 861 (2000). Petitioner here does not even allege that any of this evidence was used by the prosecution at trial. Consequently, Petitioner has not shown that the trial court's ruling has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground six**

Ground six is a composite ineffective assistance of counsel claim. Doc. 5, p. 8. Petitioner alleges his trial counsel was ineffective because he (1) was a friend of Judge Kinsey and the prosecutor, (2) admitted that Petitioner did what the State charged, but was mentally ill, (3) and allowed Judge Kinsey to introduce herself as "the victim" and to tell the potential jury "I don't think anyone should be threatened, do you?" *Id*.

Respondent argues procedural default as to issues (1) and (3), and argues the merits of issue (2). Doc. 19, p. 14. Respondent is correct that issue (3) was not presented in Petitioner's Rule 3.850 motion. Ex. L, pp. 39-61; 77-119. Petitioner has not shown cause for failing to exhaust state court remedies, or prejudice to the outcome, and the court may not reach the merits of this claim.[10]

---

[10] On direct appeal, Petitioner argued that the trial court had erred in denying Petitioner's request for the court reporter's audiotapes. Ex. C, p. 30. Petitioner asserted that witnesses at trial had informed appellate counsel that Judge Kinsey "made statements to the jury in open court, separate from her trial testimony. The witnesses were not certain whether the statements were made during jury selection or at the beginning of the trial. Specifically, one witness indicated that Judge Kinsey stated to the jury, 'I don't think anyone should be threatened, do you?" *Id*., pp. 30-31. The appellate court denied the claim when it denied the appeal without opinion. Ex. F. Thus, there is no sworn or other credible evidence in the record that Judge Kinsey introduced herself to the potential jury by the statement, "I don't think anyone should be threatened, do

Issue (1) was presented in the Rule 3.850 motion as ground 8. Ex. L, p. 97 (amended motion). The Rule 3.850 court denied ground 8 as discussed above, finding that Petitioner had not shown how the alleged friendships had prejudiced him. *Id.*, p. 130. Further, for the reasons discussed above, Petitioner has not shown that the trial court's ruling as to alleged friendships has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Issue (2) was presented in the Rule 3.850 motion as discussed above. The trial court denied the claim. *Id.*, pp. 126, 136. That was a proper application of Supreme Court precedent as discussed above.

**Ground seven**

Petitioner contends that the evidence was not sufficient to prove the charge of corruption of a public servant. He argues that Judge Kinsey testified that Petitioner never spoke with her, and the clerk testified that Petitioner never instructed her to inform anyone of his threat. Doc. 5, p. 8. He argues that "no quid pro quo was ever established," and there was no proof of any goal to be accomplished by the threat, and he asks what the threat forced Judge Kinsey to do illegally. *Id.*

This claim has been thoroughly discussed above with respect to ground four. The arguments are without merit.

---

you?"

Case No. 3:08cv370-LC/WCS

**Certificate of Appealability**

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Jeffrey E. Love challenging his convictions for corruption by threat against a public servant, case number 01-4459, and carrying a concealed firearm and resisting arrest without violence, case number 01-4460, in the Circuit Court of the First Judicial Circuit, in and for Escambia County, Florida, be **DENIED WITH**

**PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

      **IN CHAMBERS** at Tallahassee, Florida, on November 30, 2010.


                    **s/    William C. Sherrill, Jr.**      
                    **WILLIAM C. SHERRILL, JR.**
                    **UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

      **A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**